UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| FRANKLIN G. ENDICOTT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:17-CV-29 DDN |
| LARRY ALLEN, et al., | ) ) ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court upon initial review following plaintiff's filing of his second amended complaint.[1] After reviewing the second amended complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

**Legal Standard**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1] On May 26, 2017, the Court granted plaintiff leave to proceed in forma pauperis. The Court has not, however, conducted an initial review pursuant to 28 U.S.C. § 1915(e).

# The Complaint

Plaintiff, an inmate at Northeast Correctional Center ("NECC"), brings this action against Missouri Department of Corrections ("MDOC") and seventeen prison officials and food services staff at NECC, seeking monetary, declaratory, and injunctive relief pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000cc, *et seq.* ("RLUIPA"), and under 42 U.S.C. § 1983. Plaintiff has named as defendants in both their individual and official capacities: Larry Allen (Food Service Manager, NECC); Troy Bartley (Food Service Coordinator, MDOC); Frank Campbell (Correction Officer, NECC); Travis Case (Canteen Manager, NECC); Alan Earls (Deputy Division Director, Missouri Adult Institutions); Sandy Everheart (Food Service Cook, NECC); Catherine Flock (Food Service Cook, NECC); Chantay Godert (Assistant Warden, NECC); Richard Griggs (Assistant Warden, NECC); James Hurley (Warden, NECC); William Jones (Deputy Warden, NECC); Gil Long (Central Canteen Manager, MDOC); Murry Phillips (Chaplain, NECC); Anne L. Precythe (Director, MDOC); Melvina Richardson (Food Service Cook, NECC); Ron White (Correctional Officer, NECC); Debbie Williams (Food Service Cook, NECC); and MDOC.

*CRD Meals on Sabbath, High Holy Days, and Passover*

Plaintiff first claims that the certified religious diet ("CRD") kosher meals prepared by NECC violate Jewish dietary laws on the Sabbath, High Holy Days, and Passover. Plaintiff states that the CRD meals would need to include grape juice, matzo, fish and meat items on the Sabbath, High Holy Days, and Passover to conform to Jewish dietary laws. Plaintiff refers to these items as ritual kosher food items. Further, the NECC canteen does not sell kosher grape juice, matzo, or any kosher meat item, and therefore plaintiff has no means to abide by his Jewish dietary laws on the Sabbath, High Holy Days, and Passover. Plaintiff states Jewish offenders are served peanut butter in the CRD kosher meals during Passover, which is strictly

prohibited under Jewish dietary law. None of the items served to Jewish offenders on Passover are labeled as "Kosher Passover."

Additionally, to qualify for kosher meals on the Sabbath, High Holy Days, and Passover, NECC requires offenders to adhere to the daily kosher dietary law. Offenders are not allowed to engage in dietary restrictions under their religion only on the Sabbath, High Holy Days, and Passover. In contrast to the treatment of Jewish offenders, plaintiff states Muslim offenders are not required to be receiving daily CRD Muslim meals to participate in Ramadan services. He states these groups are provided their religious dietary meals every evening and morning of Ramadan services.

*Failure to Provide Religious Materials*

Plaintiff alleges defendants have refused to provide him with a Torah, Judaism prayer books, and dietary practice materials in violation of his First Amendment right to free exercise of religion and in violation of his statutory rights under the RLUIPA.

Plaintiff also claims that his rights under the Establishment Clause have been violated because NECC has a religious policy that prevents offenders from attending Judaism services unless there are a minimum of five offenders attending bible studies and services. Because there are fewer than five practicing Jewish offenders at NECC, they do not qualify as a "community" and thus Offender Canteen funds are not available to purchase Torahs, religious calendars, and literature regarding Jewish dietary laws. Plaintiff asserts that NECC's Christian and Muslim communities are large enough to qualify for distribution of money from the Offender Canteen fund.

Plaintiff also alleges he was denied access to a Torah while in the segregation unit, because the NECC chapel did not have Torahs available to bring to the segregation unit.

Plaintiff states, however, that Bibles and Qurans are provided to the Christian and Muslim offenders assigned to the segregation unit.

*Canteen Allegations*

Plaintiff states many allegations against the defendant canteen managers, Gil Long and Travis Case. He alleges these defendants refuse to add kosher items already being sold in the canteen to the offender's approved CRD purchase list. Defendants only list items as kosher, and qualified for CRD offender's purchase, if the vendor of the items lists the items as kosher on their invoice. Offenders on CRDs cannot purchase many of the technically kosher items in the canteen, because the vendor of these items has not listed them on the invoice as kosher. If plaintiff buys a kosher product that is not listed on the vendor purchase invoice as kosher, the offender is ordered off the CRD meal program for six months for his first violation; twelve months for his second violation; and forever for his third violation. Plaintiff alleges defendants Long and Case manipulate the CRD purchase list to catch plaintiff buying kosher foods not on the CRD approved list, so they can retaliate and take him off his CRD meal program.

Plaintiff states defendants Hurley, Jones, Godert, Griggs, Case, Allen, and Phillips are members of the Offender Canteen Committee and are all personally involved in approving what items are obtained from the central office canteen warehouse and sold in the NECC canteen.

*Food Service Allegations*

Plaintiff also alleges his CRD kosher meals often contain rotten fruits and vegetables, bug infested broccoli, and smaller food portion sizes compared the non-CRD meals. He states offenders have to take their opened or broken crackers, cereal, and rotten fruits and vegetables to NECC food service cooks to be replaced. Plaintiff states he is being targeted and discriminated against by NECC staff because of his continued complaints to food service cooks and his grievances concerning the lack of nutrition, small servings, and rotten fruits and vegetables.

*Retaliation—Allegations Against Defendant Frank Campbell*

On August 26, 2016, plaintiff alleges defendant Frank Campbell sent an email to defendant Chaplain Phillips requesting that plaintiff be removed from his CRD kosher meals. Campbell accused plaintiff of sharing his crackers and jelly from his CRD tray with another offender not authorized to have CRD foods. Plaintiff states NECC took him off CRD kosher meals without following their internal procedures. Namely, plaintiff did not receive a conduct violation, a CRD non-compliance form, and was never allowed to provide witness statements to prove the allegation was false.

During his six-month discipline, plaintiff was required to eat non-kosher foods from the regular food service line. Plaintiff complains this food is often cold or not cooked to the specifications he believes it should be held to. He complains of dirty trays, cups, and utensils; communal salt and pepper shakers; dead rats and birds hidden in the pipes and food storage areas; food stuck to the ceiling and walls; and slippery floors.

*Housing Unit Yard Gate*

Plaintiff additionally asserts that the NECC staff have refused "to fashion a handle" on the housing unit yard gate, causing plaintiff to cut his finger.

**Discussion**

**A.     Plaintiff's First Amendment Claims**

Plaintiff claims that defendants violated his rights under the Free Exercise Clause of the First Amendment.[2] While prisoners retain their constitutional rights, they are subject to limitations on those rights "in light of the needs of the penal system." *Murphy v. Mo. Dep't of Corr.,* 372 F.3d 979, 982 (8th Cir.), *cert. denied,* 543 U.S. 991 (2004). An inmate's

---

[2] A prisoner's claim under RLUIPA is evaluated under a different standard than a First Amendment claim. "By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Murphy*, 372 F.3d at 987 (8th Cir. 2004). *See* Part C, *infra*.

constitutional claims are evaluated under a lesser standard of scrutiny, even though such claims would receive strict scrutiny analysis if brought by a member of the general population. *Id.* "A prison regulation or action is valid, therefore, even if it restricts a prisoner's constitutional rights if it is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v. Safley,* 482 U.S. 78, 89, (1987)).

The Court finds plaintiff has stated a First Amendment claim sufficient to survive initial review under § 1915(e) against defendants Larry Allen, Troy Bartley, Frank Campbell, Travis Case, Sandy Everheart, Catherine Flock, Chantay Godert, Richard Griggs, James Hurley, Gil Long, Murry Phillips, Melvina Richardson, Ron White, and Debbie Williams.

For purposes of initial review under 28 U.S.C. § 1915(e)(2), the Court will address plaintiff's First Amendment claims as they are alleged against each defendant.

1. <u>Plaintiff's Cannot Bring Claims on Behalf of Other Inmates</u>

As an initial matter, the Court reiterates its ruling that plaintiff cannot represent a class or bring class allegations. The Court has already denied plaintiff's request to represent other inmates. Plaintiff's claims brought on behalf of other inmates as part of plaintiff's initial class allegations, including any claims brought on behalf of Messianic offenders, are dismissed. *See* ECF No. 8 (*citing* 28 U.S.C. § 1654 (pro se parties may only bring actions on their own behalf); 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1769.1 ("class representatives cannot appear pro se")).

2. <u>Plaintiff's Claims Against MDOC Director Anne L. Precythe and Alan Earls, Deputy Division Director, Missouri Adult Institutions</u>

Plaintiff names as defendants MDOC Director Anne L. Precythe and MDOC Deputy Division Director, Missouri Adult Institutions Alan Earls. The claims against these defendants sound in respondeat superior, which is not cognizable under § 1983, and therefore the Court will not issue process on plaintiff's First Amendment claims as to defendants Precythe and Earls.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). Supervisors cannot be held vicariously liable under § 1983 for the actions of a subordinate. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009). To state a claim, the plaintiff must plead that the supervising official, through his own individual actions, has violated the Constitution. *Id.*

Because plaintiff has not alleged defendants Precythe and Earls were directly involved in his alleged constitutional violations, the complaint fails to state a claim upon which relief can be granted as to these defendants. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Woods v. Goord*, 1998 WL 740782, *6 (S.D.N.Y. Oct. 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983). The Court will dismiss plaintiff's § 1983 claims against these defendants.

      3.      <u>Plaintiff's Claims Against Canteen Managers Gil Long and Travis Case</u>

Plaintiff claims canteen managers Gil Long and Travis Case manipulate the CRD purchase list by adding and removing kosher foods to catch plaintiff buying kosher foods not on the CRD approved list. He states they do this to retaliate against plaintiff for filing grievances related to the canteen. If defendants Long and Case catch plaintiff buying a kosher item not on the CRD approved list, they sanction plaintiff by taking him off his kosher diet for six months at

a time. Pursuant to NECC policy, prison officials may deprive an inmate of kosher meals for six months' time as a sanction for violating the prison rules governing religious diet.

Plaintiff's claims against defendants Long and Case survive review under § 1915(e)(2)(B) and should not be dismissed at this time. The Court will order that these defendants respond to the second amended complaint.

> 4. <u>Plaintiff's Claims Against Larry Allen, Food Service Manager, NECC; Sandy Everheart, Food Service Cook III, NECC; Catherine Flock, Food Service Cook III, NECC; Melvina Richardson, Food Service Cook III, NECC; Debbie Williams, Food Service Cook II, NECC</u>

Plaintiff alleges defendants Allen, Everheart, Flock, Richardson, and Williams ("NECC Food Service defendants") have violated his constitutional rights by providing meals that do not meet the strict Jewish dietary laws. Plaintiff claims these meals lack caloric content and are often one-half to one-third smaller than non-kosher meals. Plaintiff claims the CRD kosher meals often contain rotten fruits and vegetables, and often contain unsealed, open, or smashed crackers and cereal. Additionally, plaintiff alleges he is not provided with the specific ritual food items to abide by the Jewish dietary laws on the Sabbath, High Holy Days, and Passover, and these items are not available for purchase at the canteen. These defendants place peanut butter in plaintiff's CRD kosher meals during Passover, which is a violation of Jewish dietary laws.

Plaintiff's claims against the NECC Food Service defendants survive review under § 1915(e)(2)(B) and should not be dismissed at this time. The Court will order that these defendants respond to the second amended complaint.

> 5. <u>Plaintiff's Claims Against Troy Bartley, Food Service Coordinator, MDOC; Murry Phillips, Chaplain, NECC; James Hurley, Warden, NECC; William Jones, Deputy Warden, NECC; Richard Griggs, Assistant Warden, NECC; Chantay Godert, Assistant Warden, NECC</u>

In addition to the NECC Food Service defendants, plaintiff states the following defendants also knew of his requirement for ritual foods during the Sabbath, High Holy Days,

and Passover and made no accommodations for such food: Troy Bartley, Murry Phillips, James Hurley, William Jones, Richard Griggs, and Chantay Godert. These defendants' actions caused plaintiff to eat non-kosher foods during the Sabbath, High Holy Days, and Passover, and prevented him from engaging in the Jewish dietary law fundamental to his religion.

Plaintiff alleges these defendants, along with the canteen defendants, were personally involved in approving food items sold in NECC's canteen. These defendants refused to place kosher items on the approved CRD purchase list unless the vendor had listed the item as kosher on its purchase invoice. Plaintiff alleges these defendants have denied plaintiff kosher items from the canteen, and have failed to stock ritual foods (kosher meats, matzo, and grape juice) in the canteen.

Plaintiff's claims against defendants Bartley, Phillips, Hurley, Jones, Griggs, and Godert survive review under § 1915(e)(2)(B), and the Court will order these defendants to respond to the second amended complaint.

6.  <u>Plaintiff's Claims Against Defendant Frank Campbell, Corrections Officer II, NECC</u>

Plaintiff claims defendant Frank Campbell, Corrections Officer II, NECC, targeted plaintiff for practicing his Jewish diet and retaliated against him by falsely accusing plaintiff of passing some of his CRD meal to another inmate. As punishment for this alleged violation, defendant Campbell emailed Chaplain Phillips and asked Chaplain Phillips to remove plaintiff from his CRD kosher meals for six months. Chaplain Phillips removed plaintiff from this CRD kosher meals for six months, and plaintiff alleges this disciplinary action was taken without due process and in retaliation for practicing kosher dietary laws. Plaintiff alleges this substantially burdened his religious exercise.

Plaintiff's claims against defendant Campbell survive review under § 1915(e)(2)(B) and should not be dismissed at this time. The Court will order defendant Campbell to respond to the complaint.

**B.       Plaintiff's Eighth Amendment Claims**

       1.        <u>Plaintiff's Claim Regarding the Gate Handle</u>

In Count IX, plaintiff alleges several defendants forced plaintiff to open and close a large gate by "entwining his fingers in the chain link fence, due to no hand handle being attached to the gate." Plaintiff said this exposed him to injuries to his fingers and hand. Plaintiff alleges this violates his Eighth Amendment right to be free of cruel and unusual punishment.

The Supreme Court and the Eighth Circuit have held that state of mind giving rise to liability in a condition of confinement case is deliberate indifference. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Choate v. Lockhart*, 7 F.3d 1370, 1373-74 (8th Cir. 1993). "Deliberate indifference entails something more than mere negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Plaintiff has not alleged the state of mind of any of the officials was "wanton" or that the gate handle was not installed deliberately for a penal or disciplinary purpose. *See Wilson v. Seiter*, 501 U.S. at 297.

The Court finds Count IX does not survive review under § 1915(e)(2)(B) and will be dismissed.

       2.        <u>Plaintiff's Allegations Relating to His Purported Unlawful Conditions of Confinement Fail to State A Claim for Relief</u>

In Count VIII, plaintiff complains of unsanitary kitchen conditions and food served at unsafe temperatures. These conclusory and generalized allegations regarding what he believes to be unlawful conditions of confinement are subject to dismissal for failure to state a claim upon which relief may be granted.

In order to establish an unlawful conditions of confinement claim in violation of the Eighth Amendment, a plaintiff must allege that he has been subjected to "extreme" deprivations and been denied "minimal civilized measure of life's necessities." *See Hudson v. McMillian*, 112 S.Ct. 995, 999-1000 (1992); *Howard v. Adkinson*, 887 F.2d 134, 137 (8th Cir. 1989); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The focus in a "conditions of confinement" case often falls on the length of exposure to the purported unsanitary conditions and the level of alleged filthiness the inmate was supposedly exposed to. *See Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994) (length of time required for conditions to be unconstitutional decreases as level of filthiness increases).

Plaintiff's allegations that food service employees are not wearing gloves, the dishes are not washed with hot water, the communal salt and pepper shakers are unsanitary, and the food is lukewarm or cold are too conclusory to state a claim for relief and are not connected to any unlawful actions allegedly taken by one particular defendant. Simply put, plaintiff's nonspecific claims lack any detailed accompanying information, other than his bald legal conclusions that such conditions are unlawful.

In light of the aforementioned, the Court finds Count VIII does not survive review under § 1915(e)(2)(B) and will be dismissed.

**C.    Plaintiff's Claims Under the RLUIPA**

The Religious Land Use and Institutionalized Persons Act provides, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person --
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  "The Act defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005) (quoting 42 U.S.C. § 2000cc-5(7)(A)).  "'A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.'" *Id*. at 716 (quoting 42 U.S.C. § 2000cc-2(a)).

Having carefully reviewed the complaint, the Court finds that plaintiff has made a sufficient threshold showing of a substantial burden on his religious exercise to survive initial review.  He has stated the religious significance of his kosher diet and certain ritual foods.  He has alleged defendants are substantially burdening the exercise of his religion by not providing access to ritual foods, and by denying access to kosher foods in retaliation for grievances.  He alleges the MDOC policy regarding distributions from the Offender Canteen funds violates RLUIPA because it denies funds to the Judaism community (defined as at least five offenders) at NECC.  Plaintiff has stated an RLUIPA claim against defendants Allen, Bartley, Campbell, Case, Earls, Everheart, Flock, Godert, Griggs, Hurley, Jones, Long, Phillips, Precythe, Richardson, White, and Williams in their official capacities.[3]  As such, process shall issue as to defendants on plaintiff's RLUIPA claims.

**D.    Plaintiff's Claims against the Missouri Department of Corrections are Legally Frivolous under 42 U.S.C. § 1983**

---

[3] Naming a government official in his or her official capacity is the equivalent of naming the government entity—the State of Missouri—that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Plaintiff's individual capacity claims against the defendants under RLUIPA will be dismissed, however, as the statute does not allow for claims against individuals. *Blake v. Cooper,* 2013 WL 523710, *1 (W.D.Mo. Feb. 12, 2013); *Waff v. Reisch,* No. Civ. 07–4166, 2010 WL 3730114, *11 (D.S.D. July 30, 2010)("RLUIPA does not authorize individual capacity claims against prison officials."); *Van Wyhe v. Reisch,* 536 F.Supp.2d 1110, 1118 (D.S.D.)(same), *aff'd in part, rev'd in part on other grounds,* 581 F.3d 639 (8th Cir.2009).

Plaintiff's claims against MDOC are legally frivolous because the MDOC is not a "person" subject to a § 1983 suit. *E.g., Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.,* 948 F.2d 1084, 1086 (8th Cir. 1991) (agency exercising state power is not "person" subject to § 1983 suit). As a result, the complaint shall be dismissed a s to the MDOC pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall issue process or cause process to issue upon the second amended complaint pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office as to defendants Larry Allen, Troy Bartley, Frank Campbell, Travis Case, Sandy Everheart, Catherine Flock, Chantay Godert, Richard Griggs, James Hurley, William Jones, Gil Long, Murry Phillips, Melvina Richardson, Ron White, and Debbie Williams in their official and individual capacities, according to the RLUIPA and First Amendment claims outlined above.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the second amended complaint pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office as to defendants Anne Precythe and Alan Earls in their official capacities according to the RLUIPA claims outlined above.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue the Missouri Department of Corrections because, as to this defendant, the second amended complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both. Plaintiff's claims in the second amended complaint against the Missouri Department of Corrections are **DISMISED without prejudice**.

**IT IS FURTHER ORDERED** that Counts VIII and IX of plaintiff's second amended complaint are **DISMISSED without prejudice**.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 21st day of December, 2017

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE